S98A1879. AZIZI v. THE STATE.
(512 SE2d 622)

</div>

THOMPSON, Justice.

Defendant Mohamad Omar Azizi was convicted of malice murder in connection with the death of his wife, Homaire Azizi.[1] On appeal, his primary assertion is that the trial court erred in admit-

---

[18] *Papachristu,* supra.

[1] The victim was murdered on September 2, 1995. Defendant was indicted on December 29, 1995, and charged with malice murder, felony murder, and aggravated assault. Trial commenced on June 21, 1996, and, on July 15, 1996, the jury found defendant guilty on all counts. On July 22, 1996, the trial court sentenced defendant to life in prison for malice murder and vacated the felony murder and aggravated assault convictions. Defendant's timely filed motion for a new trial was denied on May 4, 1998, and defendant filed a notice of appeal on May 29, 1998. The appeal was docketed in this Court on August 21, 1998, and submitted for decision on briefs on October 12, 1998.

ting hearsay statements into evidence under the necessity exception to the hearsay rule. We agree that the admission of certain statements made by the victim to her lover was harmful error. Accordingly, we reverse.

Viewed in a light to uphold the verdict, the evidence shows the following: The victim was killed on September 2, 1995, in the apartment she shared with defendant and their four-year-old son. A 911 call was placed from the apartment at 1:47 p.m. that day. The caller hung up without saying anything, and the police were dispatched to the apartment.

The police arrived at the apartment at approximately 2:21 p.m. The door was ajar and the victim's body was in a closet at the top of the stairs. She was sitting, covered with blood, and with a telephone in her hand. An officer thought he felt a pulse, and moved the body to open up an air passage. However, the victim was pronounced dead at the scene.

The examiner found multiple bruises on the victim's face, two lacerations on her forehead, a pattern injury to her left ear (which indicated the ear had been pulled) and bruises on her chest. The time of death was estimated to be between 12:34 p.m. and 2:34 p.m. The cause of death was blunt force trauma to the head.

There was no sign of forced entry into the apartment; however, the dresser drawers in the bedroom were opened; clothes were scattered around the room; and the contents of a purse were found lying on the floor next to the bed.

Ramona Lum was in the Azizis' apartment complex at approximately 2:00 p.m. She noticed a car drive past her to the end of the parking lot, hesitate for a moment, then quickly back up directly toward her. The car stopped beside her, and the driver looked in her direction. He then drove into the underground residence parking lot. Later, when Ms. Lum learned about the murder, she called the police to tell them what she had seen. The detective assigned to the case asked her to come to the station to make a statement. Ms. Lum and Azizi crossed paths in the lobby of the station and Ms. Lum recognized Azizi as the man she saw in the parking lot. Although she could not identify Azizi's face, Ms. Lum recognized his unique hairstyle.

Azizi and the victim had had previous difficulties. In December 1993, in the midst of an argument between the couple, Azizi told his father-in-law that he would kill the victim, their son, and anyone who got involved if the victim separated from him. In 1994, Azizi got angry at the victim for slapping their son. He pulled the victim's ear and then pushed her face away from him. In the summer of 1995, while Azizi and the victim were arguing about their son, Azizi struck the victim and pushed her onto a bed.

1. Although the evidence is circumstantial, it is sufficient to

enable any rational trier of fact to find Azizi guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Jackson v. State*, 258 Ga. 810 (1) (375 SE2d 454) (1989).

2. The trial court allowed the victim's sisters, Zohra and Maream, as well as the victim's lover, Hosea Martin, to present hearsay testimony, concluding that it was admissible under OCGA § 24-3-1 (b) "from necessity." Zohra testified that the victim confided that Azizi did not give her enough money for food and rent; that he would not let her visit her family; that their marriage was not working out; and that she wanted a separation. Maream testified that the victim told her she was unhappy; that Azizi hit her; that she argued with Azizi about money and their child; and that she did not want to put up with Azizi anymore.

Martin, a co-worker of the victim, testified that he began an affair with the victim three months before she was killed; that the victim told him Azizi was abusing and neglecting her, and that Azizi told her he would not let her leave with their child. He also testified that on one occasion the victim picked him up from his apartment and brought him to work; and that, shortly after they arrived at work, the victim told him that she had just called Azizi, that Azizi told her he had followed her to Martin's apartment and to work, and that Azizi told her he would kill her if she left him.

There are two requirements for the admission of hearsay under the necessity exception: "necessity" and " 'particularized guarantees of trustworthiness.' " *McKissick v. State*, 263 Ga. 188 (429 SE2d 655) (1993). The first requirement is satisfied upon a showing that the declarant is deceased or unavailable, that the statement is relevant to a material fact, and that the statement is more probative than other evidence which may be offered. *Chapel v. State*, 270 Ga. 151, 155 (510 SE2d 802) (1998). The second requirement is satisfied when the declaration is coupled with circumstances which attribute verity to it. *Roper v. State*, 263 Ga. 201, 202 (2) (429 SE2d 668) (1993).

In this case, the "necessity" requirement is satisfied because the victim is deceased, the statements are relevant to show Azizi's intent, motive and bent of mind, *Simmons v. State*, 266 Ga. 223, 224 (2) (466 SE2d 205) (1996), and the statements are more probative on those facts than evidence which could be procured elsewhere. *Chapel v. State*, supra. As to "particularized guarantees of trustworthiness," we note that the victim's statements to her sisters differ from her statements to her lover. Accordingly, we treat them separately.

(a) *The victim's statements to her sisters.* As in *Roper*, supra, "the statements were made by the victim to [her] sister[s] in whom she placed great confidence and to whom she turned for help with her problems." Thus, considering the totality of the circumstances, the

statements made by the victim to her sisters possessed sufficient indicia of trustworthiness. See also *McGee v. State*, 267 Ga. 560, 566 (5) (480 SE2d 577) (1997) (statements made to best friend contained sufficient indicia of trustworthiness).

We recognize that, as we observed in *Carr v. State*, 267 Ga. 701 (482 SE2d 314) (1997), a "married person's conversations with confidants to whom the affair has been confessed are subject to doubt in that the need to justify the act of adultery might well lead to untruthfulness." Id. at 706. No such doubt arises with regard to the statements which the victim made to her sisters, however, because it would appear that they did not know about her affair. (Even if they did, many statements were made before the victim began the affair.) Moreover, unlike *Carr* and *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991), in which inconsistent statements were made to family and friends, the victim's statements to her sisters were consistent.

(b) *The victim's statements to her lover.* The statements which the victim made to her lover did not possess the requisite indicia of reliability.[2] "A married person's complaints about that person's spouse, made to one with whom the married person is conducting an adulterous affair, are subject to the possibility of exaggeration if not outright falsehood." *Carr*, supra at 705-706. Thus, the statements which the victim made to her lover were suspect and, in the absence of indicia of trustworthiness, they should not have been admitted.

Insofar as the victim's statements to her lover were duplicated by the testimony of her sisters, any error in admitting those statements might have been harmless. *Roper v. State*, supra at 203, n. 2. However, statements which the victim made to her lover which were not duplicated and which may have influenced the jury in reaching its verdict cannot be deemed harmless. The victim's statement to her lover concerning the telephone call she made to Azizi from work (Azizi said he had followed her to work and that he would kill her if she left him) falls into this category. It demonstrated that Azizi suspected his wife was having an affair and that he was willing to kill her because of it. Thus, it went to the heart of the state's case, providing a motive for the murder. Its admission into evidence is reversible error.

3. The testimony of the victim's father, mother and sisters, recounting what they witnessed in 1993, 1994, and the summer of 1995, when Azizi and the victim quarreled and fought, was not hearsay. On the contrary, it was firsthand evidence of prior difficulties

---

[2] We do not now decide whether statements which the victim made to Martin before they began having an affair are admissible. If this evidence is offered upon retrial, the trial court must independently examine the circumstances attendant to these statements and determine whether they bear sufficient indicia of reliability.

between Azizi and the victim. *McMichen v. State*, 265 Ga. 598, 604 (4) (a) (458 SE2d 833) (1995). See also *Hodges v. State*, 265 Ga. 870, 873 (4) (463 SE2d 16) (1995). Accordingly, it was admissible to prove Azizi's bent of mind toward the victim. *McMichen v. State*, supra at 604 (4) (a).

4. Tabatha Martin, Hosea Martin's wife, was permitted to testify that Martin told her the victim would never cheat on Azizi because he would kill her if she did. The trial court ruled that Tabatha Martin's testimony (which was elicited on redirect examination) was admissible because Azizi "opened the door" to it (on cross-examination). We agree with the trial court. Azizi "opened the door" to this testimony because, on cross-examination, he asked Tabatha if Martin told her that the victim would never cheat on Azizi. See *Bundrage v. State*, 265 Ga. 813, 815 (4) (462 SE2d 719) (1995).

5. Azizi argues that Ramona Lum's in-court identification of him should not have been admitted because it was based on an impermissibly suggestive pretrial identification. In this regard, Azizi contends it is obvious that the police staged an impermissibly suggestive one-on-one show-up since Ms. Lum was waiting in the lobby of the police station when Azizi walked by her. Continuing the argument, Azizi asserts this impermissibly suggestive show-up gave rise to a substantial likelihood of irreparable misidentification. See *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968).

We first consider whether the identification procedure was impermissibly suggestive. If the answer to that inquiry is negative, we need not consider the second question — whether there was a substantial likelihood of irreparable misidentification. *Way v. State*, 239 Ga. 316, 317 (3) (236 SE2d 655) (1977); *Payne v. State*, 233 Ga. 294, 299 (210 SE2d 775) (1974). The evidence demonstrates that the encounter between Ms. Lum and Azizi was not orchestrated by the police. Ms. Lum had driven to the station with another witness; she was simply waiting for that witness when she saw Azizi. No one asked Ms. Lum to look at Azizi, much less identify him. See *Wellons v. State*, 266 Ga. 77, 84-85 (463 SE2d 868) (1995) (no evidence that witness was coerced to make identification). No one suggested that Azizi was a suspect, or why he was in the police station. Thus, the encounter between Ms. Lum and Azizi occurred purely by chance; it cannot be said that it was unduly suggestive. See *Herron v. State*, 155 Ga. App. 791, 793 (3) (272 SE2d 756) (1980) (no denial of due process where pretrial confrontation is accidental and not arranged by police).

6. The trial court refused to permit Azizi to introduce evidence of a murder which occurred one month after the victim was murdered and less than two miles away. Azizi assigns error to that ruling, asserting the two murders were similar and that, therefore, evidence

of the other murder tended to point to someone else as the guilty party. In this regard, citing *Henderson v. State*, 255 Ga. 687, 689 (1) (341 SE2d 439) (1986), Azizi points out that his sole defense was that someone else committed the murder.

> Generally, evidence implicating another named individual as the actual perpetrator of the crime is relevant and admissible as tending to exonerate the defendant. *Henderson v. State*, [supra]; *Walker v. State*, 260 Ga. 737, 738 (1) (399 SE2d 199) (1991). However, this is not the case where no specific individual is accused and the defendant merely speculates that a person or persons unknown may have had the opportunity to commit the crime. *Palmer v. State*, 186 Ga. App. 892, 898 (3) (369 SE2d 38) (1988). " 'The evidence, to be admissible, must be such proof as directly connects the other person with the corpus delicti, and tends clearly to point out someone besides accused as the guilty person. Evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. . . .' [Cit.]" *Bradford v. State*, 204 Ga. App. 568, 569 (420 SE2d 4) (1992).

*Neal v. State*, 210 Ga. App. 522, 523 (2) (436 SE2d 574) (1993).

The evidence proffered by Azizi was not such as to directly connect another person to the crime or to clearly point to that person as the murderer. Id. Although there were similarities between the crimes (no forced entry, the victims were beaten, no murder weapon was found), the dissimilarities were far more striking (the victim in the other case was a young, male homosexual who was found partially nude; he was strangled, as well as beaten; his credit cards and automobile were stolen). Evidence of the other crime would have done nothing more than raise a conjectural inference that another person committed the murder. Id. The trial court did not err in refusing to admit it.

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 22, 1999 —
RECONSIDERATION DENIED MARCH 19, 1999.

*Charles A. Mullinax,* for appellant.

*Paul L. Howard,* District Attorney, *Cari K. Johanson,* Assistant District Attorney, *Thurbert E. Baker,* Attorney General, *Frank A.*

*Ilardi, Assistant Attorney General,* for appellee.