## A99A1398. CLARKE v. THE STATE.
### (526 SE2d 395)

PHIPPS, Judge.

Efuru Clarke was convicted of two counts of theft by taking while engaged in telemarketing. On appeal, Clarke claims the trial court erred in numerous evidentiary rulings on matters such as other crimes evidence. Clarke also challenges the trial court's denial of her motion for mistrial and asserts that the trial court erred in failing to instruct the jury on the definition of telemarketing. We find no reversible error but remand for a hearing on the admissibility of the other crimes evidence.

On separate occasions in November 1996, representatives of Universal Customs Direct (UCD) contacted two elderly women, Jane Schmeig and Evelyn McGinn. Schmeig and McGinn were told that they had won large prizes but that they first had to send in fees to collect the money. Schmeig sent $1,500, and McGinn sent $3,000.

---

Neither received anything in return.

Appellant Clarke was the owner of UCD, a telemarketing company operated from her apartment. Other persons, namely Henry Key and Ernest Curry, made the calls, and Clarke handled the finances. Money sent in by persons contacted was sent to a mailbox rented by Clarke. Clarke collected the money, paid the callers, sometimes sent small gifts to the persons who sent money and kept the remainder.

1. Clarke asserts on numerous grounds that vast portions of the evidence admitted should have been excluded. Clarke references only four instances, however, where objections were posed at trial. Generally, we are limited to reviewing only objections and grounds raised at trial.[1] The only applicable exception is where the trial court fails to conduct a hearing on other crimes evidence pursuant to Uniform Superior Court Rule 31.3 (B).[2] We will review the court's rulings on Clarke's four noted trial objections and the court's failure to conduct the Rule 31.3 (B) hearing.

(a) The first claim of evidentiary error asserted by Clarke concerns the testimony of Schmeig. Although Clarke was indicted only for her actions as owner of UCD, the State elicited testimony from Schmeig that another telemarketing company called Universal Advantage (UA) had defrauded her of $1,000. Clarke's attorney objected on the ground that the testimony concerned an unindicted crime. The State responded that UA and UCD were essentially the same company operated under different names and perpetrating a pattern of criminal activity. The court admitted the testimony "to show any kind of practice or custom" but stated, "[T]he jury must remain clear that the only thing that Ms. Clarke is charged with is what is actually alleged in the . . . indictment."

Before any evidence of independent offenses or acts may be admitted into evidence, the trial court must conduct a hearing pursuant to USCR 31.3 (B). At that hearing, the State must make the following three affirmative showings as to each independent offense or act it seeks to introduce: (1) "that the state seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility"; (2) "that there is sufficient evidence to establish that the accused committed the independent offense or act"; and (3) "that there is a sufficient connection or similarity between the inde-

---

[1] See *Holland v. State*, 197 Ga. App. 496, 497 (1) (398 SE2d 810) (1990); *Fletcher v. State*, 199 Ga. App. 756, 757 (406 SE2d 245) (1991).
[2] See *White v. State*, 213 Ga. App. 429, 430 (1) (445 SE2d 309) (1994).

pendent offense or act and the crime charged so that proof of the former tends to prove the latter."[3]

> After the [Rule] 31.3 (B) hearing, and before any evidence concerning a particular independent offense or act may be introduced, the trial court must make a determination that each of these three showings has been satisfactorily made by the state as to that particular independent offense or act. [Cit.][4]

Moreover, after the State has made the necessary showings at the Rule 31.3 (B) hearing, the trial court retains the sound legal discretion to exclude relevant similar crimes evidence on the ground that its probative value is substantially outweighed by the danger of unfair prejudice.[5]

As to Schmeig's testimony, the first prong for admission of similar transaction evidence was met. The court's basis for admitting Schmeig's testimony — to show "pattern or custom" — constituted a legitimate purpose under the circumstances of this case.[6]

It was not alleged here that Clarke personally participated in UA's perpetration of telemarketing fraud on Schmeig, but the evidence did show that Clarke was one of a small group of persons who formed and operated a progression of telemarketing companies from UA to UCD. The evidence further showed that each company targeted the elderly for fraudulent prize schemes, that one company would close and transform into another to avoid police detection, and that the names of victims or persons thought to be easy prey were recorded on "mooch lists" that were carried on to the succeeding companies so they could be re-targeted. Schmeig was defrauded by both UA and UCD.

For two reasons, this case must be remanded to the trial court for a Rule 31.3 (B) hearing, however. First, the court did not make the two remaining findings critical to the admission of Schmeig's other crimes evidence and did not consider whether the probative value of the testimony outweighed its possible prejudicial effect. Second, additional other crimes evidence was presented without appropriate findings being made. McGinn testified to being preyed upon by certain companies other than UCD; Sergeant Kessler of the DeKalb County Police testified almost exclusively about the criminal activity

---

[3] *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[4] Id.

[5] *White*, supra at 431.

[6] See *Durham v. State*, 179 Ga. App. 636, 637 (3) (347 SE2d 293) (1986); see generally *Hill v. State*, 183 Ga. App. 404, 405 (1) (359 SE2d 190) (1987) (testimony concerning an independent crime may be admitted to show plan, scheme, and course of conduct).

of UA, the companies that developed from it, and the persons involved; Henry Key and Earnest Curry testified in person about the criminal operations of these companies; and recorded testimony of Kashma Porter, another person involved, also dealt with the criminal operations of the other companies.

The trial court's failure to conduct a Rule 31.3 (B) hearing is harmless error if the evidence "did not measurably contribute to the jury's guilty verdict."[7] Clarke's defense was that she did not know her telemarketers were perpetrating fraud. The State's chief means of negating Clarke's state of mind defense was the other crimes evidence. A large portion of the State's case was aimed at showing that the telemarketing fraud was the exclusive purpose of the companies Clarke worked with and that the activity was so pervasive Clarke must have been a knowing participant in the frauds for which she was indicted. We cannot say the other crimes evidence did not measurably contribute to the jury's verdict.

(b) The second claim of evidentiary error relates to an objection posed by Clarke's counsel after Sergeant Kessler testified that telemarketing fraud involves stealing the pride and self-esteem of the victims in addition to stealing their money. No issue was preserved for appellate review because counsel did not state a ground for his objection.[8]

(c) Clarke's third claim of evidentiary error concerns the following hearsay objection made by her counsel:

> Prosecutor: Okay. East West Enterprises, that company, was Mr. Hampton[9] involved in that one also?
> Sgt. Kessler: Yes. East West Enterprises was located originally off Memorial Drive and 285 in an office park behind the Circuit City. And what happened in that case was that the consumer affairs people had gotten complaints on East West, went and visited with them, that spooked them, and they closed down the East West —.
> Defense Counsel: If it please the court, I object to this. This is all hearsay on the part of this — he's talking about what somebody else did, and there's no evidence that he was there, and it's apparently what somebody told him.

The court ultimately ruled that Kessler would be able to testify regarding his understanding of events to explain his conduct. But the court added, "[I]f he wasn't there, he can't testify from being there,

---

[7] (Footnote omitted.) *Hill v. State*, 263 Ga. 37, 43 (10) (427 SE2d 770) (1993).
[8] See *Fletcher*, supra.
[9] James Hampton was the owner of UA.

and I don't think he would be able to testify to their reaction if he wasn't involved in closing them down or whatever." Afterwards, only limited questioning regarding East West Enterprises followed. Kessler testified simply that East West Enterprises opened and closed in a short period of time before UCD opened.

Clarke correctly asserts that the admission of hearsay testimony may constitute grounds for reversal.[10] But the movant must make a timely objection,[11] and the evidence wrongly admitted must not be harmless.[12] The hearsay testimony was introduced before counsel made his objection, and afterwards, the State changed its line of questioning. Clarke's counsel did not move to strike the testimony, and the testimony was cumulative of other testimony that the UA-UCD string of companies opened and closed very quickly to avoid police detection.

(d) In her fourth claim of evidentiary error, Clarke asserts that Sergeant Kessler purposely and inappropriately interjected bad character evidence against Clarke. The exchange began with defense counsel asking Kessler, "[I]t's true isn't it, that the individuals who operate these schemes make every effort to conceal their identity." Kessler denied the proposition, and defense counsel sought to demonstrate the proposition through examples regarding Key and Curry. Defense counsel succeeded in getting Kessler to concede that Curry and Key had not opened bank accounts but instead had commonly patronized check cashing businesses. Kessler wanted to explain his answer, and defense counsel attempted to stop him. The court asserted that Kessler had a right to explain his answer, and over defense objection that Kessler was testifying unresponsively and giving conclusions, Kessler stated:

> These two individuals don't have very good character. . . .
> When I say that, what I mean by that, sir, is a lot of them
> are involved in drugs, and, when, you have drugs, you don't
> have the capability, you don't have employment, you can't
> just go into a bank and open up a checking account, because
> you've got to put down references, you've got to have —
> that's why the little check cashing places are so viable
> because it's a market for people that don't have the ability to
> open up a checking account to go in there, and that place
> takes a percentage of what the face value of the check is. So
> they weren't trying to hide it. They just didn't have the
> capacity to open up accounts. They didn't have good credit

---

[10] See, e.g., *Azizi v. State*, 270 Ga. 709, 712 (2) (b) (512 SE2d 622) (1999).

[11] See *McGee v. State*, 205 Ga. App. 722, 726 (9) (423 SE2d 666) (1992).

[12] See *Azizi*, supra at 712 (2) (a).

references. I mean, the word I'm looking for is they didn't have good credit. So they couldn't go out and open up things that you and I could do legitimately. So they had to find ways to get around it. And the ways to get around it was they always asked the victims to send money orders or cash. And that's what the victims did. And not out of hiring a detective, but just not having the means to go to a bank and, deposit it or withdraw it.

First, Kessler's answer was not unresponsive to the series of questions asked him by defense counsel. Second, defense counsel did not object at trial on character grounds. And without addressing whether Clarke's character was indirectly addressed by Kessler's response, Kessler did not engage in the type of "shenanigans" we have found to be reversible error.[13]

2. During the testimony of Key, the defense learned that Key and Curry had given audiotaped custodial statements after they were arrested for fraudulent telemarketing through their own companies, Freedom Financial and Decatur Financial. Clarke moved for mistrial, asserting the State violated the discovery rule by not providing the tapes at least ten days before trial. The Court reviewed the tapes in camera and denied the motion for mistrial on the ground that nothing in the tapes related to UCD or Clarke. The court also denied a motion by the defense to recall Key and Curry for additional cross-examination.

"A trial court has broad discretion in ruling on a motion for mistrial, and this court will not disturb the court's ruling absent a manifest abuse of discretion which requires a mistrial to preserve the defendant's right to fair trial."[14] Likewise, "[t]he recalling of a witness for further examination at the instance of either party is always within the discretion of the trial judge. [Cit.]"[15] We disagree with the trial court's assessment that the tapes did not provide relevant material for cross-examination, but we do not find the court manifestly abused its discretion in denying the motion for mistrial, and any possible error in denying the request for further cross-examination of Key and Curry was harmless.

Curry's and Key's taped statements principally concern their actions and the events leading to their arrests with Freedom Financial and Decatur Financial. But both tapes contained statements at

---

[13] See *Jamison v. State*, 164 Ga. App. 63 (4) (295 SE2d 203) (1982); *Boyd v. State*, 146 Ga. App. 359 (2) (246 SE2d 396) (1978).

[14] (Citations and punctuation omitted.) *Holder v. State*, 194 Ga. App. 790, 793 (2) (391 SE2d 808) (1990)

[15] *Money v. State*, 137 Ga. App. 779, 780 (3) (224 SE2d 783) (1976).

least arguably inconsistent with Curry's and Key's testimony regarding the "pattern or custom" of telemarketing fraud perpetrated through UA and its successors. Key's tape is not perfectly audible, but he does arguably state on the tape that the common practice at the companies was not to offer cash prizes but instead to offer some type of promotional bonus in connection with the sale of a product. Curry enumerated telemarketing companies for which he had worked but did not include UCD or any of the companies with which Clarke was connected.

We do not find either inconsistency was significant enough to measurably contribute to the verdict, however.[16] The essence of Key's taped statements was the same as that of his testimony — that the UA line of telemarketing companies was designed to and did perpetrate fraud by eliciting money for remunerations that victims would never receive. Clarke admitted in her own testimony that she worked with Curry.

3. Clarke's final enumeration of error asserts that the trial court erred in not defining telemarketing in its charge to the jury. Although Clarke did not request an instruction on telemarketing, she asserts the Court breached a " 'duty . . . , with or without request, to give the jury an appropriate instruction on each substantive point of issue involved in a case so as to enable the jury to judiciously decide the guilt or innocence of a defendant.' "[17] But "[t]erms of common usage and meaning need not be specifically defined in the charge to the jury. [Cits.]"[18] We find that telemarketing is a term of common usage and meaning, and that the court did not err in failing to give a charge defining it.

However, we remand the case for a Rule 31.3 (B) hearing and findings on the admissibility of the other crimes evidence presented. If the trial court determines that the State's other crimes evidence does not meet the standards of *Williams v. State*, or if its probative value is substantially outweighed by its prejudicial effect, a new trial is required.[19] On the other hand, if the evidence meets the standards of Rule 31.3 (B) and *Williams*, a new trial is not required.[20]

*Judgment affirmed on condition, otherwise reversed. McMurray, P. J., and Ruffin, J., concur.*

---

[16] See *McGee v. State*, 267 Ga. 560, 564 (2) (480 SE2d 577) (1997) (harmless error equates with measurable contribution to verdict).

[17] *Moore v. State*, 235 Ga. App. 175, 176 (509 SE2d 108) (1998).

[18] *Philpot v. State*, 268 Ga. 168, 171 (3) (486 SE2d 158) (1997).

[19] See *Hall v. State*, 230 Ga. App. 741, 743 (497 SE2d 603) (1998).

[20] Id.

DECIDED DECEMBER 1, 1999.

*Daniel B. Kane*, for appellant.
*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Barbara
B. Conroy, Assistant District Attorneys*, for appellee.