A08A1009. BUTLER v. THE STATE.
(669 SE2d 525)

BERNES, Judge.

Following a jury trial, Bobby Butler, Jr., was convicted of burglary. He appeals, arguing that the evidence was insufficient to support his conviction and that the trial court erred in admitting evidence of a similar transaction and in failing to instruct the jury with his requests to charge. We find no error and affirm.

Viewed in the light most favorable to the jury's guilty verdict, the evidence adduced at trial showed that on a weekday afternoon in April 2006, the police were summoned to the scene of a residential burglary in the Kensington Point subdivision. The owner of the home was on active military duty in Afghanistan at the time of the burglary. The victim's 14-year-old son returned home after school to discover that the frame on the rear door of the home had been broken and various items of electrical equipment, DVD movies, video games, basketball jerseys, baseball caps, purses and jewelry had been taken.

The subsequent investigation led the responding officer to broadcast a lookout for a white vehicle of a specified make and model having specific characteristics that would possibly be occupied by five named individuals, including Butler. The vehicle was later located and was indeed occupied by the same five individuals named in the broadcast. The trunk of the vehicle was filled with electrical equipment, DVD movies, video games, basketball jerseys, baseball caps, purses, jewelry and a large green military duffle bag. The stop was recorded on the officer's vehicle-mounted video recorder and the contents of the trunk were photographed; both were shown to the jury.

After talking to the owner of the vehicle, Michele Carter, the investigating detective learned that the group had previously been to three different retail stores that specialize in buying and selling used goods. Based on this information, the officer went to the first store, where he located twenty-three DVD movies and two video games that a signed receipt indicated had been sold to the store by Butler.

The detective then went to a second store and recovered several items of clothing, primarily basketball jerseys, that had been sold by Butler. The jury was presented with a signed receipt detailing the items sold as well as video surveillance footage showing Butler selling the merchandise.

Finally, the detective went to the third store, where he recovered 77 DVD movies, a video game controller, and a car amplifier.[1] A signed receipt and fingerprint card identified Butler as the seller, and, again, the jury witnessed video surveillance footage of Butler selling the merchandise to the store.

At trial, the victims positively identified items recovered from the trunk of the vehicle and all three stores as having been taken from their home. In so doing, they detailed specific identifying characteristics of a number of the items so as to eliminate the chance that they were simply generically similar to the items possessed by Butler.

Carter also testified at trial. She stated that on the morning in question, she skipped school and went to the home of her boyfriend, Alfonso Woods. Woods also lived in the Kensington Point subdivision, and Butler was at Woods's home when Carter arrived. After loaning her car to Woods, Carter took a nap. When she awoke, Woods and Butler, among others, were in the garage. The trunk of the vehicle was open, and Carter observed several baseball caps on the top of the car, two suitcases on the floor of the garage, and a large green duffle bag. She heard Butler state that he "got the games from a house in

---

[1] The car amplifier had not been stolen from the victims' residence.

Alfonso's neighborhood [and] that he kicked the door to get in." Carter then took the men to the stores indicated above.

Woods also testified that he dropped Butler "down the block and around the corner" and that Butler returned, walking quickly, with a large green duffle bag and a suitcase. The men put the items in the trunk and backseat of the vehicle and returned to Woods's house. Woods further testified that the items in the bags included DVD movies, hats, and basketball jerseys. The jury learned that Woods had been convicted of theft by receiving for his part in the burglary.

Finally, the state presented similar transaction evidence involving Butler's prior burglary conviction. Less than seven months prior to the burglary in this case, Butler was arrested and subsequently pled guilty to a burglary in a subdivision located approximately two miles from Kensington Point. In that case, law enforcement was dispatched to a burglary in progress after a neighbor observed two males kick open the rear door of a residence. The residence belonged to an Army serviceman. Butler was then observed by the responding officer exiting the house carrying a green Army duffle bag filled with a DVD player, DVD movies, video game consoles, several video games, clothing, hats, and jewelry. Butler was apprehended after fleeing from the officer into the surrounding woods. The crime occurred during the morning hours on a weekday after the victim had left to report to the Army base.

Butler did not testify and no evidence on his behalf was presented at trial. The jury found him guilty of burglary as opposed to the alternative count of theft by receiving stolen property.

1. The evidence presented at trial was sufficient to sustain Butler's burglary conviction. See OCGA § 16-7-1 (a);[2] *Chambers v. State*, 288 Ga. App. 550, 551 (654 SE2d 451) (2007) ("Evidence of recent, unexplained possession of stolen goods may be sufficient to give rise to an inference that the defendant committed the burglary.") (citation, punctuation and footnote omitted); *Davis v. State*, 275 Ga. App. 714, 715-716 (1) (621 SE2d 818) (2005) (affirming burglary convictions based primarily upon evidence that defendant pawned the stolen items within several hours of the burglaries).

2. Butler argues that the trial court erred in admitting the similar transaction evidence of his prior burglary. Our Supreme Court has held that, before evidence of a prior offense may be admitted into evidence, the trial court must hold a hearing pursuant to Uniform Superior Court Rule (USCR) 31.3 (B), at which time it

---

[2] "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another. . . ." OCGA § 16-7-1 (a).

must make a determination that (1) the state seeks to admit the evidence of the prior offense for an appropriate purpose; (2) there is sufficient evidence that the accused committed the prior offense; and (3) there is sufficient connection or similarity between the prior offense and the crimes charged so that proof of the former tends to prove the latter. See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991); USCR 31.3 (B). The trial court's ruling on the issue of connection or similarity of similar transaction evidence will not be disturbed unless it is clearly erroneous. *Smith v. State*, 273 Ga. 356, 357 (2) (541 SE2d 362) (2001).

Contrary to Butler's assertion, the trial court did conduct a hearing pursuant to USCR 31.3 (B) prior to admitting the disputed evidence. Further, we agree with the trial court's determination that the evidence comported with the *Williams* test set forth by the Supreme Court.

First, as advanced by the state, the evidence was admitted for the appropriate purpose of showing Butler's bent of mind, course of conduct, and intent. See *Ford v. State*, 281 Ga. App. 114, 115 (1) (635 SE2d 391) (2006). The trial court gave the jury a limiting instruction to this effect both immediately prior to the admission of the evidence and during the general charge to the jury. Second, although Butler's guilty plea was sufficient to establish that he actually committed the prior crime, the state also presented testimony from the officer who arrested Butler after he fled from the scene of the burglary as well as from the victim in that case. Id. Third, the two burglaries are sufficiently similar: both crimes occurred during daytime hours on a weekday; they were committed within approximately two miles of each other; in both instances, forced entry was achieved after kicking in and breaking the frames on the rear doors; Butler was seen carrying a tall, green military bag full of belongings from both residences; and the items taken from the homes — electronic equipment related to movies and video games, DVD movies, video games, clothing, hats, and jewelry — were similar. Finally, the victims and owners of both residences were military personnel. We agree with the trial court's conclusion that the crimes were sufficiently similar so that proof of the former crime tended to prove that Butler also committed the crime at issue in this case. See *Judkins v. State*, 282 Ga. 580, 582-583 (3) (652 SE2d 537) (2007); *Morgan v. State*, 287 Ga. App. 569, 573 (4) (651 SE2d 833) (2007); *Drake v. State*, 274 Ga. App. 882, 883-884 (2) (619 SE2d 380) (2005).

3. Lastly, Butler claims that the trial court erred in denying his request to charge the jury that the owner of a vehicle (Carter) is presumed to possess everything in the vehicle absent evidence sufficient to rebut that presumption and that mere spatial proximity

to contraband is insufficient to establish constructive possession beyond a reasonable doubt. Butler's argument lacks merit.

"It is error to refuse to give a charge only where the request is a correct statement of law that is pertinent and material to an issue in the case and not substantially covered by the charge actually given." (Citation and punctuation omitted.) *Taylor v. State*, 272 Ga. 744, 745 (1) (534 SE2d 67) (2000). This is not a presumption of possession case. The overwhelming evidence presented at trial supported the state's theory that it was Butler who burglarized the victims' residence by entering their home, without authority, and with the intent to commit a felony. See OCGA § 16-7-1 (a). Indeed, the fact that the jury rejected the alternate charge of theft by receiving stolen property illustrates that Butler's conviction was not based solely upon his possession of the stolen goods. Compare OCGA § 16-7-1 (a) with OCGA § 16-8-7 (a). Butler's assertion that the trial court should have charged on the inverse of possession — i.e., that because he did not own the vehicle the presumption would be that he was not responsible for the stolen goods found therein — was not adjusted to the facts or evidence and would have served only to mislead the jury. See *Benson v. State*, 275 Ga. App. 180, 181-182 (2) (620 SE2d 441) (2005).

Likewise, the trial court did not err in failing to charge the jury that mere spatial proximity to contraband is insufficient to establish constructive possession beyond a reasonable doubt. The jury was instructed that Butler could not be convicted based upon mere speculation or conjecture of his guilt; that a conviction could be based only upon a finding that Butler directly committed the crime or intentionally helped in its commission; that the state must prove knowledge on the part of Butler that the crime of burglary was being committed and that he knowingly and intentionally participated in that crime; that Butler's mere presence at the scene of the crime was not sufficient to support a conviction; and that the jury could not infer guilt from Butler's possession of the stolen goods if there was any reasonable explanation for that possession. Consequently, the jury instruction as a whole adequately covered the principle of law that Butler's request sought to invoke. See *Tran v. State*, 246 Ga. App. 153, 160 (7) (539 SE2d 862) (2000) (a trial court does not err in failing to give a requested charge "when its charge as a whole contains the same principles of law set forth in the request") (punctuation and footnote omitted); *Brewer v. State*, 224 Ga. App. 656, 657 (1) (481 SE2d 608) (1997). We discern no error.

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED NOVEMBER 14, 2008.

*E. Suzanne Whitaker*, for appellant.
*Tommy K. Floyd, District Attorney, David E. Slemons, Assistant District Attorney*, for appellee.