## A09A1727. GRANT v. THE STATE.

(691 SE2d 581)

BERNES, Judge.

Following a jury trial, Wayne Grant was convicted of aggravated assault, aggravated sexual battery, burglary and interference with governmental property. He argues on appeal that the trial court erred in denying his motion to exclude evidence of a pretrial identification by the victim; in admitting similar transaction evidence without first making the necessary legal findings; and in allowing a state's witness to testify to certain statements made by Grant during the preliminary hearing. He further contends that the evidence was insufficient to support his conviction. For the reasons that follow, we remand this case to the trial court for additional proceedings consistent with this opinion.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or consider witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Footnotes omitted.) *Green v. State*, 300 Ga. App. 688 (686 SE2d 271) (2009).

So construed, the evidence showed that on the evening of October 16, 2005, the victim heard a knock on the back door of her home. Immediately after opening the door, she was physically attacked by a man that she did not recognize, who began brutally beating and kicking her. The victim ultimately lost consciousness and, when she awoke, her vagina had been penetrated with a rolling pin. At some point during the attack, the perpetrator called the victim a "pig lover."

The ensuing police investigation revealed that in the days before the attack, the victim had been involved in a conversation with her landlord and her neighbor, Renada Grant, appellant's niece. During this exchange, the landlord had mentioned to Ms. Grant that the victim's boyfriend was a police officer and that he would be residing with the victim and "keeping an eye on things." On the day immediately prior to the attack, Ms. Grant's live-in boyfriend was arrested on an outstanding bench warrant and Ms. Grant was charged with harboring a fugitive.

In the days after the attack, the victim met with a forensic sketch artist who constructed a composite drawing of the attacker

based upon a physical description given by the victim. The drawing was seen by a local law enforcement officer who was familiar with Grant and believed the sketch to be "a perfect sketch of him." As a result, the investigating detective added Grant's picture to one of the books of photographs already being viewed by the victim. According to the investigating officer, the victim became "hysterical" upon viewing Grant's photograph and identified him as the perpetrator.

Grant was subsequently arrested and placed in a jail cell in the Tattnall County jailhouse with a second inmate. When the toilet in the cell overflowed and caused flooding, Grant was moved into a second cell by himself. Within one day of Grant being moved into his own cell, that toilet also overflowed. An officer observed that the toilet appeared to have been stuffed full of toilet paper.

Grant was tried on aggravated assault, aggravated sexual battery, burglary and interference with governmental property. The victim identified him as the perpetrator at trial. The jury convicted Grant on all counts, and this appeal followed.

1. Grant first argues that the trial court erred in denying his motion to suppress evidence of the pretrial photographic lineup in which the victim identified him as the perpetrator of the crimes. The motion was brought to the trial court's attention the morning of trial. Grant argued that the photographic identification procedure was impermissibly suggestive and gave rise to a substantial likelihood of irreparable misidentification. The state briefly responded and the trial court thereafter summarily denied the motion, apparently on the ground that Grant had failed to file the motion in writing and in a timely fashion.

But the trial court's finding that Grant's motion was untimely and not filed in writing is directly contradicted by the record.[1] Moreover, presumably because of its procedural ruling, the trial court failed to conduct an evidentiary hearing on the issue and we find that the record is otherwise insufficient for meaningful appellate review.[2]

---

[1] Our review of the record reveals two motions to suppress the victim's pretrial identification. One was filed at arraignment and another several months prior to trial.

[2] There are several factual issues raised by the record and by Grant which we cannot resolve. Significantly, while police testified at trial to the conduct of an identification procedure, the victim testified that she did not recall previously viewing Grant's photograph or identifying it from any books of photographs presented to her. She also expressed doubt that Grant's photograph resembled the man who had attacked her. Finally, there appears to be an issue as to the degree of similarity between Grant's photograph and the other photographs in the book allegedly shown to the victim; Grant contends that the identification procedure was unduly suggestive because all of the photographs in the book except his were polaroids and also because his photograph was the last one in the book. The book of photographs is not part of the record on appeal so we have been unable to review it. But, more importantly, all the factual issues surrounding the identification procedure are for resolution by the trial court.

Accordingly, we remand this case to the trial court for conduct of an evidentiary hearing on Grant's motion to suppress the victim's pretrial identification. See generally *State v. Norton*, 280 Ga. App. 657, 659-660 (634 SE2d 810) (2006); *Joncamlae v. State*, 257 Ga. App. 459, 463-464 (2) (b) (571 SE2d 461) (2002). Cf. *Parker v. State*, 255 Ga. 167, 168 (1) (336 SE2d 242) (1985) (remanding the case for further proceedings after the trial court denied the motion to suppress appellant's confession without first determining whether the statement was made voluntarily). Compare *Bryant v. State*, 268 Ga. 664, 666-667 (6) (492 SE2d 868) (1997) (finding no error in the trial court's failure to include necessary findings of fact "where there [was] no evidence which would authorize the grant" of appellant's motion to suppress her custodial statement); *Craver v. State*, 246 Ga. 467, 467-468 (1) (271 SE2d 862) (1980); *Nelson v. State*, 208 Ga. App. 686, 686-687 (1) (431 SE2d 464) (1993). At the hearing, "[t]he threshold inquiry [shall be] whether the identification procedure was impermissibly suggestive." *Gravitt v. State*, 239 Ga. 709, 710 (4) (239 SE2d 149) (1977). "An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or . . . is the equivalent of the authorities telling the witness, 'This is our suspect.' " (Citations and punctuation omitted.) *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999). See *Heyward v. State*, 236 Ga. 526, 527-528 (1) (224 SE2d 383) (1976).

If the trial court determines that the identification procedure was in fact impermissibly suggestive, then the court shall assess whether the suggestiveness gave rise to a substantial likelihood of misidentification based on an evaluation of the following factors:

> (1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the accused; (4) the witness's level of certainty at the confrontation with the accused; and (5) the length of time between the crime and the confrontation.[3]

(Citation omitted.) *Doublette v. State*, 278 Ga. App. 746, 749 (1) (629 SE2d 602) (2006). See *Heyward*, 236 Ga. at 529 (1). "The ultimate question is, whether under the totality of the circumstances, the identification is reliable." *Rutland v. State*, 296 Ga. App. 471, 475 (2) (675 SE2d 506) (2009). See *Smith v. State*, 160 Ga. App. 60, 60-61 (1) (286 SE2d 45) (1981).

---

[3] The record as it currently stands is devoid of evidence relating to the first two factors.

2. Grant further argues that the trial court erred in admitting similar transaction evidence without first making the necessary findings in accordance with *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). We agree.

In *Williams*, the Supreme Court held that

> before any evidence of independent offenses or acts may be admitted into evidence, a hearing must be held pursuant to Uniform Superior Court Rule 31.3 (B). At that hearing, the state must make three affirmative showings as to each independent offense or act it seeks to introduce. The first of these affirmative showings is that the state seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility.[4] The second affirmative showing is that there is sufficient evidence to establish that the accused committed the independent offense or act. The third is that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. After the 31.3 (B) hearing, and before any evidence concerning a particular independent offense or act may be introduced, the trial court must make a determination that each of these three showings has been satisfactorily made by the state as to that particular independent offense or act.

(Citation and footnote omitted.) *Williams*, 261 Ga. at 642 (2) (b). See *Butler v. State*, 294 Ga. App. 540, 542-543 (2) (669 SE2d 525) (2008); *McKenzie v. State*, 294 Ga. App. 376, 378-379 (3) (670 SE2d 158) (2008). Even if the trial court concludes that the state has made the requisite showings at the Rule 31.3 (B) hearing, it retains the discretion to exclude the similar transaction evidence on the ground that its probative value is substantially outweighed by the danger of unfair prejudice. *Clarke v. State*, 241 Ga. App. 186, 188 (1) (a) (526

---

[4] Purposes that have previously been deemed "appropriate" include those which demonstrate that the independent offense or act:

> is one of a system of mutually dependent crimes; or is evidence of guilty knowledge; or may bear upon the question of the identity of the accused, or articles connected with the offense; or is evidence of prior attempts by the accused to commit the same crime upon the victim of the offense for which he stands charged; or where it tends to prove malice, intent, motive, or the like, if such an element enters into the offense charged.

(Citation omitted.) *Williams*, 261 Ga. at 642 (2) (b), n. 2.

SE2d 395) (1999).

Prior to trial, Grant moved to suppress evidence of an incident that occurred in 1988 and resulted in his convictions for burglary and kidnapping. The convictions were predicated upon Grant's entry into the apartment where his girlfriend was staying and his forcible taking of the girlfriend to a location that was unknown to her family. At trial, the girlfriend testified to the circumstances surrounding the kidnapping and noted that at the time the crime occurred, she was recovering from injuries that Grant had previously inflicted upon her.

The trial court summarily denied Grant's motion to suppress the evidence. In so doing, the trial court failed to make a determination that the state met its burden of showing that the 1988 incident was being admitted for an appropriate purpose, that the evidence was sufficient to establish that Grant committed the acts alleged and testified to, and that the 1988 incident was sufficiently similar or connected to the instant crime so that proof of the former tended to prove the latter. See *Williams*, 261 Ga. at 642 (2) (b). Because we cannot say that "it is highly probable that the [similar transaction evidence] did not contribute to the judgment," we cannot hold that its admission was harmless. (Citation and punctuation omitted.) *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). See *Clarke*, 241 Ga. App. at 189 (1) (a). Compare *Hill v. State*, 263 Ga. 37, 43 (10) (427 SE2d 770) (1993). Accordingly, upon remand, the trial court is also instructed to conduct a hearing pursuant to Uniform Superior Court Rule 31.3 (B) in order to determine whether the similar transaction evidence comports with the requirements set forth in *Williams* and, if so, whether its probative value is outweighed by its prejudicial impact. See *Clarke*, 241 Ga. App. at 187-189 (1) (a); *Hall v. State*, 230 Ga. App. 741, 743 (497 SE2d 603) (1998); *White v. State*, 213 Ga. App. 429, 430-431 (1) (445 SE2d 309) (1994).

3. Grant further argues that the trial court erred in admitting evidence of a previous incident involving Grant and his wife, during which his wife's daughter called the police. Because Grant opened the door to this line of questioning during direct examination of his own witnesses, he cannot complain of the state's cross-examination of those witnesses about the same incident. See OCGA § 24-9-64; *Pye v. State*, 269 Ga. 779, 788 (17) (505 SE2d 4) (1998); *Parker v. State*, 256 Ga. 543, 549 (7) (350 SE2d 570) (1986).

4. Grant next asserts that the trial court erred in admitting, during the state's case-in-chief, Grant's testimony that he had given during the preliminary hearing. The testimony was introduced through the investigating detective who was present at the preliminary hearing and personally heard Grant's testimony. Grant argues that the testimony constituted inadmissible hearsay.

Hearsay evidence is defined as "that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a). Grant's testimony during the preliminary hearing, presented at his criminal trial during which he took the stand and testified, simply is not hearsay and does not fall within the confines of OCGA § 24-3-1 (a). Grant's argument to the contrary lacks merit.

5. Finally, Grant challenges the sufficiency of the evidence against him.

(a) *Aggravated Assault, Aggravated Sexual Battery, and Burglary.* Even in the absence of the evidence discussed in Divisions 1 and 2 above, we hold the evidence was sufficient to sustain his convictions. The state presented testimony that in the days immediately preceding the attack on the victim, Grant's niece had been privy to a conversation in which it was disclosed to her that the victim's boyfriend was a police officer. Within a day, Grant's niece was arrested and charged for harboring a fugitive, her live-in boyfriend. Immediately thereafter, the victim was brutally beaten and sexually battered while being called a "pig lover." A local law enforcement officer recognized that the assailant's composite sketch resembled Grant, and the victim identified Grant as the perpetrator of the crime during the trial. This evidence was sufficient to enable a rational trier of fact to find Grant guilty of aggravated assault, aggravated sexual battery, and burglary beyond a reasonable doubt. See OCGA §§ 16-5-21 (a) (2) (aggravated assault); 16-6-22.2 (b) (aggravated sexual battery); 16-7-1 (a) (burglary). See also OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hood v. State,* 245 Ga. App. 391 (1) (537 SE2d 788) (2000); *Craig v. State,* 276 Ga. App. 329, 330 (1) (623 SE2d 518) (2005); *Banks v. State,* 269 Ga. App. 653, 653-654 (1) (605 SE2d 47) (2004).

(b) *Interference with Governmental Property.* The toilets in two separate jail cells overflowed shortly after Grant was placed into those cells, the second incident occurring when Grant was the only inmate in the cell. An officer investigating the second incident observed that the toilet had been stuffed full with toilet paper. The state also presented testimony that the toilets in the jailhouse were not otherwise prone to flooding in the absence of some sort of tampering. This evidence was sufficient for any reasonable juror to find Grant guilty of interference with governmental property beyond a reasonable doubt. See OCGA § 16-7-24 (a); *Jackson,* 443 U. S. at 307; *Carter v. State,* 267 Ga. App. 520-521 (1) (600 SE2d 637) (2004).

(c) *In Conclusion.* On remand, if the trial court determines that the evidence discussed in Division 1 above should have been ex-

cluded, Grant is entitled to a new trial on the counts of aggravated assault, aggravated sexual battery, and burglary. See OCGA § 16-1-8 (d) (2); *Williams v. State*, 258 Ga. 305, 310-311 (1) (369 SE2d 232) (1988). If the trial court determines that the evidence discussed in Division 2 above should have been excluded, Grant is entitled to a new trial on all counts.[5] See id. Finally, if the trial court concludes that the evidence discussed in both Divisions 1 and 2 was properly admitted, Grant's convictions will be affirmed and Grant will be entitled to appeal the trial court's findings.

*Case remanded. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 8, 2010.

*Tina E. Maddox*, for appellant.
*Tom Durden, District Attorney, Joe G. Skeens, Assistant District Attorney*, for appellee.

---

[5] Based upon the record before this Court, we cannot say that it is highly probable that evidence tending to reflect negatively on Grant's character did not contribute to the jury's guilty verdict on the charge of interference of governmental property. See *Johnson*, 238 Ga. at 61; *Clarke*, 241 Ga. App. at 189 (1) (a).