A10A1723. KELLEY v. THE STATE.
(707 SE2d 619)

BARNES, Presiding Judge.

Based upon allegations that he sexually abused a foster child placed in his care, a jury convicted Frederick D. Kelley of two counts of aggravated sexual battery and four counts of child molestation. On appeal from the denial of his motion for a new trial, Kelley contends that the trial court erred in admitting similar transaction evidence and that his trial counsel rendered ineffective assistance. For the reasons set forth below, we affirm.

Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and Kelley is no longer presumed innocent. *Boring v. State,* 303 Ga. App. 576, 577 (1) (694 SE2d 157) (2010). So viewed, the evidence showed that Kelley was the founder and pastor of the Greater New Macedonia International

---

Church of God and Christ. As part of their ministry, Kelley and his wife were actively involved with the church youth and also chose to serve as foster parents. In 2006, several young foster children were living in their home, including the 15-year-old female victim.

The sexual abuse alleged in this case occurred on three successive mornings in September 2006. In the early morning hours of Wednesday, September 27, 2006, Kelley entered the bedroom shared by the victim and another young girl in his foster care. The victim was asleep but awoke as Kelley pulled aside her bedcovers and placed his hands underneath her nightgown. Kelley began rubbing the victim's breasts and vagina through her bra and underwear. He stopped when the victim's roommate stirred in her bed.

At approximately the same time the next morning, Kelley returned to the victim's bedroom while the victim and her roommate were asleep. Kelley began rubbing the victim's breasts and vagina underneath her bra and underwear. Kelley also penetrated the victim's vagina with his fingers. As on the previous day, he stopped when the victim's roommate stirred in her bed. Kelley committed these same acts again around the same time the next morning.

On each of the three days that Kelley sexually abused the victim, she disclosed the abuse to an adult male friend whom she saw regularly on the way to school. After the third incident, her friend called 911 and reported the victim's outcries of sexual abuse. Following the 911 call, the victim and other foster children were removed from Kelley's home.

Kelley was arrested and indicted on two counts of aggravated sexual battery and four counts of child molestation.[1] At trial, the victim testified to the incidents of sexual abuse as previously described, and the State presented several witnesses to whom the victim had disclosed the abuse, including the victim's adult friend who had called 911. The State also introduced into evidence and played for the jury a videotape of a forensic interview of the victim conducted at the Georgia Center for Child Advocacy in which the victim described the sexual abuse.

In addition, the trial court, after conducting a pretrial hearing and giving a limiting instruction to the jury, allowed the State to introduce similar transaction evidence for the purpose of showing Kelley's bent of mind, course of conduct, and lustful disposition. The similar transactions involved prior acts by Kelley perpetrated against four other teenage victims — another female foster child who lived in Kelley's home at the same time as the victim, Kelley's niece, and two of Kelley's sisters-in-law.

[1] Kelley also was indicted for rape, but the jury acquitted him of that count.

The female foster child who served as a similar transaction witness testified that one night while she was sleeping, Kelley came into her bedroom and began rubbing her on her stomach underneath her pajamas and then moved his hands up toward her breasts. When she awoke, Kelley stopped and left the room. The foster child was 14 years old at the time of the incident.

Kelley's niece also testified as a similar transaction witness. The niece testified that when she was 13 years old, she lived for several months with Kelley and his wife. According to the niece, Kelley repeatedly sexually abused her at night when everyone else in the home was asleep, and also during the day when they were alone together. The niece testified that Kelley initially fondled her on top of her clothing but progressed to touching her underneath her clothing and ultimately forced her to have sexual intercourse with him on multiple occasions.

Two of Kelley's sisters-in-law testified as similar transaction witnesses concerning how Kelley assaulted them when they were teenagers. The first sister-in-law testified that when she was 12 years old, she came to stay with Kelley and his wife. She testified that one night while she was sleeping, Kelley approached her, forced himself on top of her, and tried to pull down her pajama pants. When she began to struggle, Kelley stopped and left the room.

The second sister-in-law testified that when she was 14 and 15 years old, Kelley pinned her down and touched her in her private areas on several occasions when his wife was away. She further testified that on one occasion, she "responded back" to Kelley's sexual advances and they began having sexual intercourse, at which point she told Kelley to stop because she was in pain. Kelley, however, refused to stop. The sister-in-law testified that from that point forward, Kelley had sexual intercourse with her on repeated occasions. According to the sister-in-law, she ultimately became pregnant and gave birth to a child that Kelley and his wife coerced her into letting them raise as their own.

Kelley's defense to the testimony presented by the State was that the victim had been inconsistent in her statements regarding the sexual abuse and had fabricated the allegations. Likewise, Kelley's defense to the similar transaction evidence was that the witnesses were fabricating the allegations of prior sexual abuse, although he admitted that he was the father of his sister-in-law's child.

After hearing all of the testimony, the jury convicted Kelley of the aggravated sexual battery and child molestation offenses. Kelley moved for a new trial, arguing that his trial counsel was ineffective for failing to call a witness who would have testified that she routinely drove the victim to the bus stop on weekday mornings, that

she drove the victim to the bus stop on the three mornings of the alleged sexual abuse, and that the victim's demeanor on those mornings "was the same as it always was previously." The trial court denied the motion, and this appeal followed.

1. The testimony discussed above was sufficient to enable a rational jury to find Kelley guilty beyond a reasonable doubt of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA §§ 16-6-4 (a) (1); 16-6-22.2 (b). Questions regarding the weight of the evidence and credibility of the witnesses were for the jury, rather than this Court, to decide. *Johnson v. State*, 289 Ga. App. 206, 208 (656 SE2d 861) (2008).

2. Kelley claims that the trial court erred in allowing the State to present similar transaction evidence of prior instances involving young teenage girls. We disagree.

> Before the State may introduce similar transaction evidence, it first must make three affirmative showings: (1) that the evidence is being admitted for a proper purpose; (2) that the defendant committed the separate offense; and (3) that the independent offense is sufficiently similar to the offense for which the defendant is on trial such that proof of the former tends to prove the latter.

(Footnote omitted.) *White v. State*, 291 Ga. App. 646, 646-647 (662 SE2d 757) (2008). See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). After the State has made these three affirmative showings, the trial court retains the discretion to exclude the similar transaction evidence if its probative value is substantially outweighed by the danger of unfair prejudice. See *Grant v. State*, 302 Ga. App. 661, 664-665 (2) (691 SE2d 581) (2010); *Clarke v. State*, 241 Ga. App. 186, 188 (1) (a) (526 SE2d 395) (1999).

Kelley argues that the State did not identify a proper purpose for admitting the similar transaction evidence and that the evidence was unfairly prejudicial.[2] These arguments are without merit. It is well settled under Georgia law that in cases involving the sexual abuse of a child, evidence of prior acts against other children is admissible for the purpose of showing the bent of mind, course of conduct, and lustful disposition of the defendant. See *Copeland v. State*, 276 Ga. App. 834, 836-837 (1) (625 SE2d 100) (2005); *Lewis v. State*, 275 Ga.

---

[2] Kelley does not contest that the State presented adequate evidence that he committed the other transactions or that the other transactions were sufficiently similar to the charged offenses.

App. 41, 42-43 (2) (a) (619 SE2d 699) (2005).[3] Furthermore, the trial court acted within its discretion in concluding that the similar transaction evidence was not unfairly prejudicial, in light of the trial court's limiting instruction to the jury, see *Moody v. State*, 273 Ga. App. 670, 672 (2) (615 SE2d 803) (2005), and "because the prior transactions in this case corroborated the victim's testimony and rebutted [Kelley's] defense of fabrication." *Helton v. State*, 268 Ga. App. 430, 434 (3) (c) (602 SE2d 198) (2004). Accordingly, we discern no error by the trial court in admitting the similar transaction evidence over Kelley's objection, particularly since "Georgia courts construe the rules regarding the use of similar transaction evidence liberally in cases involving sexual offenses." (Punctuation and footnote omitted.) *Enurah v. State*, 279 Ga. App. 883, 885 (2) (633 SE2d 52) (2006).

3. Kelley contends that his trial counsel rendered ineffective assistance by failing to call a critical defense witness at trial. Again, we disagree.

> To prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. We need not address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either prong.

(Citations and punctuation omitted.) *Towry v. State*, 304 Ga. App. 139, 143 (2) (695 SE2d 683) (2010). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In addressing ineffective assistance claims on appeal, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Kelley argues that his trial counsel was deficient for failing to call the neighbor who routinely drove the victim to the bus stop every day before school. The neighbor worked for the Department of Family and Children Services and was a member of the church where Kelley served as pastor. The neighbor would have testified that on the three mornings of the alleged sexual abuse, she drove the victim to the bus stop and there was nothing unusual about her demeanor

---

[3] In arguing otherwise, Kelley relies upon case law from a foreign jurisdiction that is not binding on this Court.

on those days. The neighbor informed Kelley's trial counsel of what she had observed prior to the trial.

At the hearing on Kelley's motion for a new trial, his trial counsel testified that the decision not to call the neighbor was a strategic one. According to trial counsel, "[t]he fact of [the victim's] demeanor came out through other means and other witnesses," and he believed that the jury would not find the neighbor credible, given that she was a member of Kelley's church. Consequently, trial counsel made a tactical decision not to call the neighbor as a witness based upon his conclusion that the defense "could do without her."

To prove deficient performance, a defendant must rebut the strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct. *Robinson*, 277 Ga. at 76. "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008).

We cannot say that trial counsel's strategic decision to forego calling the neighbor as a witness was patently unreasonable. Trial counsel correctly noted that evidence of the victim's "normal" demeanor on the mornings of the alleged sexual abuse came out at trial through other witnesses, including Kelley's wife and the victim herself. Given that the neighbor's testimony would have been cumulative of other testimony admitted at trial and that her credibility could be questioned because Kelley was her pastor, Kelley failed to rebut the strong presumption that his trial counsel's decision fell within the broad range of reasonable professional conduct. See generally *McDougal v. State*, 284 Ga. 427, 428 (2) (667 SE2d 592) (2008) (trial counsel's decision to forego calling defense witness based upon belief that the witness's testimony would be cumulative and that testimony might "backfire" before the jury was a reasonable strategic one). As such, Kelley was unable to demonstrate that his trial counsel rendered deficient performance, and thus could not succeed on his ineffective assistance claim.

*Judgment affirmed. Blackwell and Dillard, JJ., concur.*

DECIDED MARCH 16, 2011 — ▮▮▮▮▮▮▮▮

*Brian Steel*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.