**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 27, 2012

# In the Court of Appeals of Georgia

A12A0326. JONES v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Javonti Jones of family violence battery. During the trial, the State introduced evidence of three similar transactions to prove bent of mind, course of conduct, and intent. On appeal, Jones contends that the trial court erred in allowing the State to introduce the similar transaction evidence. Jones further contends that the trial court should have ruled on whether the State would be allowed to introduce evidence of his prior criminal convictions for impeachment purposes before he made the decision whether to testify. For the reasons discussed below, we affirm.

Following a criminal conviction, we construe the evidence in the light most favorable to the verdict, and the defendant is no longer presumed innocent. *Cochran v. State*, 300 Ga. App. 92 (684 SE2d 136) (2009). Construed in this manner, the

evidence showed that Jones and the victim were involved in an intimate relationship and lived together for approximately three years. During that time, they had a son together. Over the course of their relationship, Jones had a history of pushing and striking the victim when they argued. In 2005, the victim broke up with Jones after a violent episode that culminated in Jones pleading guilty to misdemeanor battery under the family violence section of the battery statute, OCGA § 16-5-23.1 (f) (1).[1] Although their relationship ended in 2005, the victim and Jones maintained contact over the ensuing years because of their son and tried to remain civil with one another for that reason.

---

[1] OCGA § 16-5-23.1 (f) provides in relevant part:
(f) If the offense of battery is committed between past or present spouses, persons who are parents of the same child, parents and children, stepparents and stepchildren, foster parents and foster children, or other persons living or formerly living in the same household, then such offense shall constitute the offense of family violence battery and shall be punished as follows:
(1) Upon a first conviction of family violence battery, the defendant shall be guilty of and punished for a misdemeanor; and
(2) Upon a second or subsequent conviction of family violence battery against the same or another victim, the defendant shall be guilty of a felony and shall be punished by imprisonment for not less than one nor more than five years. . . .

The encounter between Jones and the victim forming the basis for the present case occurred on January 7, 2009. On that date, in the early morning hours, Jones stopped at the victim's home in Hall County on his way home from a business trip. Jones asked the victim if he could come inside and get a few hours sleep because he was exhausted from his trip and was too tired to finish his drive. The victim obliged, and Jones came inside her home and slept for several hours.

Later that day, after taking their son to school, the victim was upstairs in the child's playroom putting together a toy storage unit. Jones awoke and came into the playroom. He walked over to the window and looked outside but then went back to the bedroom across the hall where he had been sleeping. The victim noticed that her cell phone, which had been in a chair by the window, was no longer there when Jones left the room.

Once the victim realized that her cell phone was missing, she yelled out for Jones to return it to her. When Jones failed to respond, the victim went across the hall to confront him. She still had a screwdriver in her hand from working on the storage unit. When the victim entered the bedroom, Jones was hiding underneath the comforter on the bed. The victim went over to the bed, pulled back the comforter, saw that Jones was looking through the phone numbers and texts on her phone, and began

3

wrestling with him to get her phone back. While grabbing for her cell phone, the victim accidentally poked Jones with the screwdriver that was in her hand, but Jones sustained no visible injuries as a result of the accident. Jones then jumped out of the bed, grabbed the victim by the throat, picked her up, and threw her against the doorframe of the playroom across the hall, causing her to drop the screwdriver.

After she was thrown against the doorframe, the victim started to scream, at which point Jones shut the playroom windows. The victim tried to get up from the floor, run downstairs, and escape from her home. Jones responded by picking up a toy bat, chasing the victim downstairs, grabbing her by the hair, and throwing her onto a couch. Jones struck the victim across her arms and legs with the toy bat and kicked her in the back of her leg. Eventually, Jones calmed down, and he forced the victim to go back upstairs. He promised the victim that "[it] would never happen again," warned her not to "make a big deal out of this," and asserted that she "would go to jail for aggravated assault" if she called the police because she had "stabbed" him with the screwdriver. Jones then left the home, and the victim called the police.

A police officer responded to the call and interviewed the victim, who disclosed how Jones had attacked her. The officer also took photographs of the victim. As a result of the attack, the victim sustained several visible injuries,

4

including red marks on her neck and right thigh. She also developed bruises on her shoulder, her right thigh, and the back of her head.

Jones was arrested, indicted, and tried for felony battery under the recidivist subsection of the family violence section of the battery statute, OCGA § 16-5-23.1 (f) (2). At trial, the victim testified about how Jones had attacked her in the January 7, 2009 incident and about the prior instances of violence that Jones had perpetrated against her. The State also called the responding officer, among other witnesses, and introduced the photographs of the victim's injuries that were taken by the officer. Additionally, the trial court, after conducting a pretrial hearing and giving a limiting instruction to the jury, allowed the State to introduce similar transaction evidence for the purpose of showing Jones's bent of mind, course of conduct, and intent.

The first prior transaction occurred in January 2005 when a woman on her way to work honked her car horn at Jones's vehicle after he almost ran her off of the road. She testified that a few minutes later, when she arrived at work and got out of her car to walk inside, Jones drove up beside her, got out of his car, and began screaming and cursing at her. According to the woman, Jones repeatedly pushed his body up against her and spit on her. She finally got past Jones and ran into her workplace, where she called security.

5

The second and third prior transactions occurred in October 2008 when Jones physically attacked his then-current girlfriend on two successive days. Regarding the first of the two transactions, the girlfriend testified that after a heated argument, Jones shut a car door on her wrist, bent her fingers backward, and later drove her to a remote location where he choked her and attempted to shove her into the trunk of an abandoned vehicle. According to the girlfriend, Jones stopped attacking her when he heard someone else on the property, after which he calmed down and drove her home.

The next transaction occurred the following day, when Jones became upset with his girlfriend for talking on the phone with her mother and crying when her mother asked her if everything was alright. The girlfriend testified that after the phone call, Jones kicked her repeatedly, shoved her into a closet, and tried to burn her with a hot iron. Jones eventually left, and she called the police.

After introducing this combined evidence, the State rested. Jones chose not to testify at trial, but he called several witnesses in an attempt to show that the victim in the present case and his former girlfriend involved in the October 2008 transactions were fabricating their version of events. In closing argument, Jones's defense counsel argued that the victim in the present case had been inconsistent in her statements regarding the January 7, 2009 encounter, that the encounter did not occur as she had

6

described it, and that the evidence indicated that the victim "was the aggressor" with the screwdriver and that Jones simply "fought her off." Defense counsel further contended that the first prior transaction, which occurred in January 2005, was a "road rage incident" that had no bearing on the current case, and that the two October 2008 transactions involving his then-current girlfriend had been fabricated.

After hearing all of the testimony and argument, the jury convicted Jones of the charged offense of family violence battery, and the trial court denied his motion for a new trial. Jones now appeals.

1. The testimony discussed above was sufficient to enable a rational jury to find Jones guilty beyond a reasonable doubt of the charged offense. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA § 16-5-23.1 (f) (2). "Questions regarding the weight of the evidence and credibility of the witnesses were for the jury, not this Court, to decide." *Kelley v. State*, 308 Ga. App. 418, 421 (1) (707 SE2d 619) (2011).

2. Jones contends that the trial court erred in allowing the State to present similar transaction evidence of the three prior incidents that occurred in January 2005 and October 2008.

> To obtain admission of similar transaction evidence, the State must show (1) that it seeks to introduce the evidence for a proper purpose; (2) that there is sufficient evidence that the accused committed the independent offense or act; and (3) that sufficient similarity exists between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

(Citation and footnote omitted.) *Alvarez v. State*, 309 Ga. App. 462, 464 (2) (710 SE2d 583) (2011). See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). If the State makes these three affirmative showings, the trial court still may exclude the similar transaction evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Kelley*, 308 Ga. App. at 421 (2). Absent an abuse of discretion, we will affirm a trial court's ruling on the admissibility of similar transaction evidence. *Alvarez*, 309 Ga. App. at 464 (2).

Jones argues that the trial court abused its discretion in this case because the three prior transactions were not sufficiently similar to the crime charged of family violence battery and their probative value was substantially outweighed by the danger of unfair prejudice.[2] We are unpersuaded.

---

[2] Jones does not contest that the prior transactions were admitted for a proper purpose or that the State presented sufficient evidence that he committed the prior transactions. Nor does he argue that the passage of time between the prior

(a) The trial court acted within its discretion in finding that a sufficient similarity existed between the three prior transactions and the crime charged so that proof of the former tended to prove the latter. With regard to the first prior transaction that occurred in January 2005, it is true that the female victim in that incident did not have a prior relationship with Jones and that it did not involve domestic abuse. But "[t]here is no requirement that the independent acts be identical to the crime charged; "the proper focus is on the similarity, not the differences, between the separate crimes and the crime in question." (Citation and punctuation omitted.) *Hickson v. State*, 308 Ga. App. 50, 52 (2) (706 SE2d 670) (2011). Moreover, when the State introduces prior transactions to show the defendant's bent of mind, course of conduct, and intent, "a lesser degree of similarity is required than when such evidence is introduced to prove identity." (Citations and punctuation omitted.) *Neal v. State*, 290 Ga. 563, 564 (2) (722 SE2d 765) (2012).

In the January 2005 transaction, Jones became enraged when a woman honked her horn at him and approached her at her workplace, screamed and cursed at her, shoved her with his body, and spit on her. The prior transaction was similar to the

transactions and the current charge was so large as to justify exclusion of the evidence.

9

encounter in the present case in that in both instances, Jones became enraged and reacted impulsively and aggressively in response to a perceived challenge from a woman. Accordingly, the transaction helped to show Jones's bent of mind, course of conduct, and intent with regard to the present case. See, e. g., *Hickson*, 308 Ga. App. at 53 (2) (prior incident showed defendant had propensity of "drastically escalating" an encounter "with little or no provocation for doing so"); *Willis v. State*, 214 Ga. App. 479, 480 (3) (a) (448 SE2d 223) (1994) (prior incident showed defendant's temper and his propensity "to act violently and impulsively to disappointment, jealously or misunderstanding").

Furthermore, evidence of prior attacks committed by a defendant with little or no provocation is relevant to show intent and bent of mind in cases where the defendant claims self-defense. See *Farley v. State*, 265 Ga. 622, 624 (2) (458 SE2d 643) (1995); *Smith v. State*, 232 Ga. App. 290, 296 (501 SE2d 523) (1998). Jones's theory of the case in closing argument was that the victim was the aggressor and that he merely fought back to defend himself. The prior January 2005 transaction, which illustrated that Jones had a propensity to react violently when only slightly provoked, tended to disprove his claim of self-defense. See id. The trial court therefore

committed no error in finding a sufficient similarity between the January 2005 transaction and the charge in the current case.

The trial court likewise did not err in finding a sufficient similarity between the current charge and the second and third prior transactions that occurred in October 2005. Like in the present case, both of those prior transactions involved a female victim who had an intimate relationship with Jones, and both involved Jones reacting violently and disproportionately in response to little or no provocation.

> [I]n cases of domestic violence, prior incidents of abuse against family members or sexual partners are more generally permitted because there is a logical connection between violent acts against two different persons with whom the accused had a similar emotional or intimate attachment. Such acts can demonstrate the accused's attitude or mindset (i.e., his bent of mind) as to how sexual partners should be treated. Prior acts can also show an accused's course of conduct in reacting to disappointment or anger in such a relationship, evidencing a pattern. Such evidence may be particularly important in domestic violence cases where the incidents often occur at home, in private, and may involve only the conflicting testimony of the two parties involved.

(Citations and punctuation omitted.) *Brigman v. State*, 282 Ga. App. 481, 485 (2) (639 SE2d 359) (2006). See also *Neal*, 290 Ga. at 564 (2); *Hall v. State*, 287 Ga. 755,

11

757 (2) (699 SE2d 321) (2010). It follows that the trial court did not abuse its discretion in finding that a sufficient similarity existed.[3]

(b) The trial court also acted within its discretion in finding that the probative value of the three prior transactions was not substantially outweighed by the danger of unfair prejudice. There was no abuse of discretion in this regard because the trial court gave detailed limiting instructions before the similar transaction evidence was admitted and at the close of the case, and the prior transactions corroborated the victim's testimony and rebutted Jones's claim that the victim's version of events was fabricated. See *Neal*, 290 Ga. at 564 (2); *Rivera v. State*, 282 Ga. 355, 359 (3) (647 SE2d 70) (2007); *Kelley*, 308 Ga. App. at 422 (2).

2. Jones filed a motion in limine seeking to prevent the State from introducing two of his prior criminal convictions for impeachment purposes if he chose to testify at trial. The trial court reserved ruling on the motion, concluding that the issue would not be ripe for decision until Jones took the stand and the State sought to impeach

---

[3] Jones also argues that the trial court erred in admitting testimony regarding the October 2008 prior transactions because he pled nolo contendere to charges based on those transactions. However, introducing testimony of a prior similar transaction that culminated in such a plea is not error, where, as here, no reference to the plea came into evidence. See *Hansen v. State*, 205 Ga. App. 604, 607 (1) (423 SE2d 273) (1992); *Proulx v. State*, 196 Ga. App. 303 (1) (395 SE2d 668) (1990).

him with the prior convictions on cross-examination. On appeal, Jones argues that the trial court should have ruled on whether the State would be allowed to introduce the prior convictions for impeachment purposes before he made the decision whether to testify. According to Jones, he could not make an informed decision about whether to testify in the absence of a ruling by the trial court on the admissibility issue.

The trial court committed no error. It is well established that "[t]he trial court has discretion to hear a motion in limine prior to trial or to reserve ruling on the admissibility of evidence until it is offered during trial." *Holland v. State*, 176 Ga. App. 343, 344 (3) (335 SE2d 739) (1985). See *Wiggins v. State*, 249 Ga. 302, 303 (1) (b) (290 SE2d 427) (1982). Moreover, Jones clearly was aware of the his prior convictions that the State sought to introduce for impeachment purposes, and, therefore, he was able to weigh the risk of those convictions being introduced into evidence when deciding whether to testify in his own defense. Consequently, Jones's argument that he could not make an informed decision over whether to testify is without merit.

*Judgment affirmed. Adams, and McFadden, JJ., concur.*