**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1848. ASHLEY v. THE STATE.

McFADDEN, Judge.

After a jury trial, Thad Lee Ashley was convicted of kidnapping, criminal attempt to kidnap, entering an automobile, and criminal trespass. He argues, among other things, that the evidence was insufficient to support his kidnapping and attempted kidnapping convictions and that the trial court erred in admitting character evidence. We agree that the challenged evidence improperly placed Ashley's character into issue and, accordingly, we reverse. We find, however, that the other evidence was sufficient to support the convictions, and therefore Ashley may be retried. See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

1. *Sufficiency of the evidence.*

In considering whether the evidence was sufficient to support a defendant's conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original). So viewed, the evidence showed that in September 2011, Ashley was subject to a criminal trespass warning that barred him from the mobile home park in which his father lived. Nevertheless, on September 4, Ashley approached seven-year-old K. L. in the mobile home park. At that time, K. L. was inside her family's minivan in front of her home, helping to buckle younger children into their seats. Ashley grabbed K. L. by the wrist and pulled her out of the vehicle. The girl broke free from Ashley and ran, screaming and shaking, to her nearby mother. Ashley began to walk away, then returned to the minivan and reached inside toward two-year-old B. L., who scrambled away from him. The girls' mother yelled at Ashley, who fled. Ashley gave law enforcement officers several conflicting explanations for his behavior, including that he was under the influence of drugs and that he believed the minivan belonged to his father.

The jury found Ashley guilty of kidnapping K. L. and attempting to kidnap B. L. Ashley argues that this evidence was insufficient to support these convictions, that as to K. L. the evidence did not demonstrate the element of asportation and that as to both girls the evidence did not show that he possessed the necessary criminal intent. We are not convinced.

(a) *Asportation.*

Under the current version of the kidnaping statute, which applies to this case, "[a] person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a). "[S]light movement shall be sufficient; provided, however, that any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense." OCGA § 16-5-40 (b) (1). "Movement shall not be considered merely incidental to another offense if it: (A) Conceals or isolates the victim; (B) Makes the commission of the other offense substantially easier; (C) Lessens the risk of detection; or (D) Is for the purpose of avoiding apprehension." OCGA § 16-5-40 (b) (2).

3

Ashley argues that, when he pulled K. L. from the minivan, his movement of her was merely incidental to the offense of entering an automobile. We disagree. The offense of entering an automobile is committed when a person "enter[s] any automobile or other motor vehicle with the intent to commit a theft or felony." OCGA § 16-8-18. The state charged Ashley with committing this offense by entering the minivan with the intent to commit the felony of kidnapping. The movement of K. L. was a required element of the felony upon which the entering an automobile offense was based. As such, the movement of K. L. was not incidental to the offense of entering an automobile but instead made the commission of that offense easier. See OCGA § 16-5-40 (b) (2) (B).

Ashley does not otherwise challenge the sufficiency of the evidence to show asportation. And we find that the evidence was sufficient under the current version of OCGA § 16-5-40, which makes clear that only *slight* movement is required to show asportation as long as the movement is not incidental to another offense. See generally *Hammond v. State*, 289 Ga. 142, 143 (710 SE2d 124) (2011) (explaining that law prior to the 2008 decision of *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), required only slight movement to satisfy asportation element of kidnapping and that amendments to OCGA § 16-5-40, effective July 1, 2009, reestablished the

4

sufficiency of slight movement). In many Georgia cases construing the slight movement requirement we have found similar movement of even a few feet sufficient to support a kidnapping conviction. See, e.g., *Ellis v. State*, 282 Ga. App. 17, 20 (1) (637 SE2d 729) (2006) (defendant dragged victim "a few feet" toward an open window); *Boykin v. State*, 264 Ga. App. 836, 839 (1) (592 SE2d 426) (2003) (defendant forced victim to get out of car and lie on ground); *Phillips v. State*, 259 Ga. App. 331, 331-332 (1) (577 SE2d 25) (2003) (defendant grabbed victim as she tried to run out of store and forced her back into store, moving her six to eight feet during struggle); *Estes v. State*, 234 Ga. App. 150, 151 (505 SE2d 840) (1998) (defendant told victim to get into vehicle, grabbed victim, and struggled with her, during which defendant moved victim "a little" and victim took "a single step" toward vehicle before victim broke away from defendant); *Giddens v. State*, 190 Ga. App. 723, 725 (3) (380 SE2d 274) (1989) (defendant pushed victim into car).

(b) *Intent.*

Ashley argues that there was insufficient evidence to show that he had the criminal intent to kidnap either girl. In support of this argument he cites to evidence that he mistakenly believed the minivan belonged to his father.

"A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6. Criminal intent "does not mean an intention to violate a penal statute but an intention to commit the act prohibited thereby. Expressed another way, intent refers to the proposition that one intends the consequences of his voluntary actions." *Schwerdtfeger v. State*, 167 Ga. App. 19, 20 (1) (305 SE2d 834) (1983) (citations and punctuation omitted). "The presence or lack of criminal intent is for the jury to decide based on the facts and circumstances proven at trial." *Thomas v. State*, 320 Ga. App. 101, 104 (2) (739 SE2d 417) (2013) (citation omitted).

The evidence in this case authorized the jury to find that Ashley had the criminal intent necessary to find him guilty of kidnapping K. L. and attempting to kidnap B. L. The evidence showed that Ashley approached the girls, whom he did not know, while they were in their mother's open minivan. He grabbed K. L., lifted her, and carried her out of the minivan against her will. When Ashley picked her up, K. L. began yelling and struggling before breaking free from him. Ashley then reentered the minivan and tried to grab B. L., who scrambled away from him. As the girls' mother yelled at him, Ashley fled. These facts, including Ashley's flight from the

6

scene, presented evidence of consciousness of guilt. *Thomas*, 320 Ga. App. at 104-105 (2).

Although Ashley offered an explanation for these actions that he argued showed he lacked criminal intent, the jury was authorized to reject that explanation. See *Thomas*, 320 Ga. App. at 105 (2); *Schwerdtfeger*, 167 Ga. App. at 20 (1). And his claimed intoxication is not relevant to the issue of his criminal intent in this case. See *Guyse v. State*, 286 Ga. 574, 578 (2) (690 SE2d 406) (2010) (voluntary intoxication generally is not excuse for criminal act); *Foster v. State*, 258 Ga. 736, 745 (10) (374 SE2d 188) (1988) (intoxication defense involves separate issue from lack of intent to commit crime).

2. *Character evidence.*

Nevertheless, we must reverse because the trial court improperly allowed the state to present character evidence against Ashley. That evidence depicted Ashley as a person who behaved in a manner around children that made others uncomfortable, and it included three specific incidents in the summer of 2011 in which Ashley had engaged in questionable conduct around children at the mobile home park swimming pool. There was evidence that Ashley squirted a young boy with a water gun so hard that he made the boy cry. There was evidence that he looked at young girls in a

7

manner that made one girl's mother uncomfortable and gave another onlooker a "very bad vibe." Finally, there was evidence that Ashley often picked at and teased children in his family, making them cry. One of the children he picked at was his ten-year-old niece, whom he would flick with his finger on the back of the head or ribcage, even though she strongly disliked this behavior. The niece testified to a specific incident at the pool where Ashley flicked her on her side and she threatened to hit him. The trial court allowed the state to introduce the above evidence after the state argued that the evidence concerned similar transactions.

Georgia's former Evidence Code, which applied at the time of the trial in this case, provided that "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." Former OCGA § 24-2-2 (2012). (Similar transaction evidence is addressed in Georgia's new Evidence Code at OCGA § 24-4-404 (b).)

> To admit evidence of an independent offense or act committed by the accused, the state must show that it seeks to introduce the evidence for an appropriate purpose, there is sufficient evidence to establish that the accused committed the independent offense, and there is a sufficient connection or similarity between the independent offense and the crime

charged so that proof of the independent act tends to prove the crime charged.

*Jackson v. State*, 291 Ga. 54, 55 (2) (727 SE2d 454) (2012) (citation omitted). In other words, "[s]imilar transaction evidence may be admitted if it is substantially relevant for some purpose other than to show a likelihood that the defendant committed the crime on trial because he is a person of criminal character." *Porter v. State*, 264 Ga. App. 526, 531 (4) (591 SE2d 436) (2003) (citation and punctuation omitted). "The evidence is not to be admitted, however, if it merely raises an improper inference about the character of the accused." *Chua v. State*, 289 Ga. 220, 232 (2) (710 SE2d 540) (2011) (citation omitted). On appellate review, "[w]e accept the trial court's findings of fact unless they are clearly erroneous and will uphold the decision to admit the similar transaction evidence unless there has been an abuse of discretion." *Jackson*, 291 Ga. at 55 (2) (citation omitted).

The trial court admitted the similar transaction evidence in this case for the sole purpose of showing Ashley's criminal intent. The evidence, however, was not relevant to show that purpose. The state has not argued that Ashley's behavior in the earlier incidents was criminal. While a similar transaction need not be a crime, see *Chua*, 289 Ga. at 232 (2), the fact that a person engaged in a non-criminal behavior

9

does not evince criminal intent. The state sought to use acts in which Ashley *lacked* criminal intent to prove that he had criminal intent in another instance.

Our Supreme Court has held that, "[w]here the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." *Bradshaw v. State*, __ Ga. __, __ (3) (__ SE2d __) (S14A1365, decided March 2, 2015) (citation and punctuation omitted). Applying this rule, the Court determined that evidence of a similar transaction was relevant to establish a defendant's intent in the charged offense because the similar transaction and the charged offense "involve[d] the same mental state." Id. at __ (3). Accord *United States v. Dickerson*, 248 F3d 1036, 1047 (IV) (A) (11th Cir. 2001) (to establish that similar transaction, offered as proof of intent, is relevant to issue other than defendant's character, as required under Federal Rules of Evidence, "it must be determined that the extrinsic offense requires the same intent as the charged offense") (citations and punctuation omitted). This case, in contrast, involves instances where Ashley had different mental states – lacking criminal intent on the one hand and allegedly possessing criminal intent on the other hand.

It is true that the *Bradshaw* and *Dickerson* cases, cited above, did not address our former Evidence Code. Nevertheless, they are persuasive. While Georgia's new Evidence Code is more restrictive than the former Evidence Code in the sense that it no longer lists bent of mind or course of conduct as proper purposes for similar transaction evidence, see *Johnson v. State*, 292 Ga. 22, 25 n. 3 (2) (733 SE2d 736) (2012), in other respects the new Evidence Code's treatment of similar transaction evidence is, as one commentator has noted, a rule of inclusion that expands the admission of such evidence. See R. Carlson, et al., *Carlson on Evidence*, p. 120 (3d Ed. 2015). Moreover, the adoption of our new Evidence Code did not change the requirement that similar transaction evidence be relevant to show a proper purpose; that requirement is found in cases decided under both the old and new Codes. See *Bradshaw*, __ Ga. at __ (3); *Porter*, 264 Ga. App. at 531 (4). Nor did the adoption of the new Evidence Code change Georgia's definition of relevant evidence; under both Codes evidence is relevant if it logically tends to prove or disprove any material fact at issue in the case. See OCGA § 24-4-401; *City of Atlanta v. Landmark Environmental Indus.*, 272 Ga. App. 732, 744 (10) (613 SE2d 131) (2005) (citing former OCGA § 24-2-1). Simply put, there is no reason to discount our Supreme

11

Court's discussion in *Bradshaw* of how to determine the relevance of similar transactions to prove criminal intent.

Considering *Bradshaw*'s instruction that we "compar[e] the defendant's state of mind in perpetrating both the extrinsic and charged offenses," *Bradshaw*, __ Ga. at __ (3), we find there was not a sufficient similarity or connection such that evidence that Ashley had engaged in certain acts without a criminal intent tended to prove that he had the requisite criminal intent for the kidnapping and attempted kidnapping offenses. Instead, the evidence merely raised an inference about Ashley's character – that he is a person who engages in annoying and disturbing behavior around children. As such, the evidence should not have been admitted. See *Chua*, 289 Ga. 232 (2).

In his ruling, the trial court also found that Ashley's behavior at the pool was part of "a series of incidents that culminate[d] in the [kidnapping,]" and suggested that the evidence of the pool incidents might be admissible as part of a single transaction rather than as separate, similar transactions. See generally *Burger v. State*, 242 Ga. 28, 32 (8) (247 SE2d 834) (1978) (if separate act is committed as part of same transaction as that for which accused is being tried, and forms part of res gestae, evidence of it is admissible). Nothing from the record, however, shows that Ashley's

12

behavior around children in the summer of 2011was intrinsic to the crimes charged in this case – the kidnapping and attempted kidnapping of different children two months later. See generally *Peoples v. State*, 295 Ga. 44, 52 (4) (b) (757 SE2d 646) (2014) (rejecting state's argument that evidence of prior robbery was evidence of charged crimes associated with subsequent home invasion, rather than similar transaction, because the evidence of the robbery was "extrinsic to the crimes charged; it did not bear directly on [defendant's] alleged conduct in this case, nor was it intrinsic to, or inextricably intertwined with, the crimes at the [victims'] house") (citation omitted).

The admission of the improper character evidence against Ashley requires reversal. The jury found Ashley guilty of kidnapping and attempted kidnapping rather than lesser included offenses of simple battery and simple assault. A significant amount of the state's evidence addressed Ashley's character, and we cannot say that it was highly probable that the error in admitting that character evidence did not contribute to the jury's verdict. See *Peoples*, 295 Ga. at 55 (4) (c).

3. *Remaining claims of error.*

Given our disposition, we do not address Ashley's remaining claims of error.

13

*Judgment reversed. Andrews, P. J., Barnes, P. J., and Doyle, P. J., concur; Boggs, Ray, and Branch, JJ., dissent.*

A14A1848. ASHLEY v. THE STATE.

RAY, Judge.

Because I believe that the trial judge did not abuse its discretion in admitting similar transaction evidence of Ashley's prior conduct around young children, I respectfully dissent to Division 2 of the majority opinion and otherwise would affirm the conviction.

The majority relies upon *United States v. Dickerson*, 248 F.3d 1036, 1047 (IV) (A) (11th Cir. 2001) for the proposition that similar transaction evidence, when offered as proof of intent, must demonstrate that the extrinsic offense "requires the same intent as the charged offense" under the Federal Rules of Evidence. It is telling that both the majority and Ashley's appellate brief fail to cite to any relevant Georgia law in support of this holding. This is because Georgia's case law construing our former evidence code imposed no such requirement. Federal Rule of Evidence 404

(b), relied upon by *Dickerson*, and our new Evidence Code apply a more restrictive standard than our former evidence code in admitting evidence of similar transactions for the purpose of showing a defendant's intent.

Under our former evidence code, "there [was] no requirement that the independent acts be identical to the crime charged; the proper focus is on the similarities, not the differences, between the separate [acts] and the crime in question." (Citation and punctuation omitted.) *Jones v. State*, 316 Ga. App. 443, 446 (2) (a) (729 SE2d 578) (2012). Moreover, when the State introduces prior acts to show a defendant's intent, "a lesser degree of similarly is required than when such evidence is introduced to prove identity.") (Citation and punctuation omitted.) *Kinder v. State*, 284 Ga. 148, 150 (3) (663 SE2d 711) (2008). Accord, *Jones*, supra (finding evidence of prior attacks committed by a defendant with little or no provocation was relevant to show his intent in a domestic violence case where he alleged he acted in self-defense); *Carver v. Stone*, 258 Ga. 385, 385 (369 SE2d 471) (1988) (defendant, a member of the KKK, was charged with making terroristic threats to a person of a different race; trial court did not abuse its discretion in allowing prosecution to present substantial evidence, unrelated to the incident involving the victim, of defendant's racist statements and beliefs to prove his 'intent to terrorize.')

2

Here, the trial court found that the prior acts were logically connected to the current charges: the same trailer park, the same approximate time period, a series of incidents culminating in the crime charged, and all involving inappropriate contact with young children. Ashley's defense at trial is that he could not form the requisite intent to commit the crimes charged because of his drug use. This was sufficient to raise an issue concerning his state of mind, and it created a possibility that the jury could have concluded that while he committed the charged acts, he did not intend to do so. Intent is, therefore, at issue in this case, and the trial court did not abuse its discretion in allowing evidence that Ashley had a history of demonstrating an inappropriate interest in and behavior around young children as evidence that he did, in fact, intend to commit the crimes charged.

I am authorized to state that Boggs and Branch, JJ., join in this dissent.

3